UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

WESLEY H. KAISER,                          )
                                           )   No.  14-CV-0078-JLQ
                        Plaintiff,         )
          vs.                              )   MEMORANDUM OPINION
                                           )   AND ORDER RE: MOTION
                                           )   FOR SUMMARY JUDGMENT
                                           )
SPOKANE COUNTY and DEPUTY                  )
J. RUSSELL,                                )
                                           )
                        Defendants.        )
_____   )

    BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No.
22) and Motion to Exclude Plaintiff's Expert Winthrop Taylor (ECF No. 20). Richard
Wall represents the Plaintiff and Heather Yakely the Defendants. Response and Reply
briefs have been filed. (ECF No. 28, 29, & 33).  The Motions were submitted for decision,
without oral argument, on July 10, 2015.

## I. Introduction

    This action was filed in state court on July 1, 2013, and removed by the Defendants
to this court on March 21, 2014.  Plaintiff's claims arise out of an encounter with the
Defendant Deputy Russell on May 2, 2010.  On that date, Plaintiff was at Sacred Heart
Medical Center in Spokane, Washington, visiting his son who was receiving treatment for
a gunshot wound.  Plaintiff contends he was wrongfully asked to leave the room by
Spokane County Deputy Sheriff Russell and that excessive force was used in removing
him.  Plaintiff brings claims of excessive force and unlawful arrest against Deputy Russell
under 42 U.S.C. § 1983, and also a state law negligence claim against Russell. The only
allegation in the Complaint against Spokane County is that the County is responsible on a
theory of respondeat superior for the state law negligence claim.

ORDER - 1

Defendants generally deny the allegations, and have moved for summary judgment on all claims. Plaintiff in Response (ECF No. 29) concedes that "there is insufficient evidence to sustain a § 1983 claim against Spokane County under *Monell* and that the County is entitled to summary judgment on that claim." (ECF No. 29, p. 2). Plaintiff also states: "Defendants do not seek summary judgment as to Plaintiff's excessive force claims against Deputy Russell." (*Id*. at p. 1-2). While it is true that Defendant's Motion does not focus on the excessive force claim, both the Motion and the Proposed Order (ECF No. 22-1) seek that "all causes of action" be dismissed.

As to the claim of unlawful arrest, Defendants contend that Deputy Russell had probable cause to arrest Mr. Kaiser for obstruction and resisting arrest in violation of RCW § 9A.76.020 and § 9A.76.040. On the negligence claim, Defendants argue Plaintiff cannot establish breach of duty or damages. Defendants argue that expert medical testimony is required to link Plaintiff's alleged wrist injuries to the handcuffing by Deputy Russell.

Plaintiff claims that summary judgment should be denied because there are genuine issues of fact as to whether Plaintiff engaged in any conduct that could reasonably be construed as obstruction or resisting arrest. Plaintiff further states that no expert testimony is required to establish his injuries, and that if such expert testimony were required it could be provided by his treating physician, Dr. Trumble, who has been disclosed as a potential witness.

## II.  Factual Background

In summary judgment proceedings, the facts are viewed in a light most favorable to the non-movant, in this case the Plaintiff. Additionally, Plaintiff has presented a videotaped recording of a portion of the interaction between he and Deputy Russell in the hallway of the hospital. When there is a video recording, the Supreme Court has directed that the court view the facts "in the light depicted by the videotape" and if the non-movant's version of events is utterly contradicted by the video, it cannot be accepted as true for the purpose of summary judgment. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

The following facts are taken from Plaintiff's Statement of Facts and the video:

      Plaintiff Wesley Kaiser, along with other family members was in a hospital room at Sacred Heart Hospital on May 2, 2010, where his son was being treated for a gunshot wound (Pltf's St. of Facts ¶ 1 at ECF No. 31).  Plaintiff states he was asked to leave the room by Deputy Russell and "at first refused, but later complied". (*Id*. at ¶ 2).  Plaintiff claims that as he exited the room, Russell pushed him in the back, then handcuffed him, and escorted him down the hallway. (*Id*. at ¶ 4-5).  Plaintiff asserts that as he was escorted down the hallway Russell threw him "against a wall, twisted his hands and wrists, and took him to the ground." (*Id*. at ¶ 6).  Plaintiff states he was arrested for obstruction and resisting, although he denies he resisted. He alleges he was placed in a patrol car and taken to the County jail.

      The video depicts an individual, who is apparently Plaintiff Wesley Kaiser, come out of the hospital room and stand very close to the officer, apparently Deputy Russell.  The video appears to show Russell placing his hand on Kaiser's lower back, but there is no visible shove[1].  Russell handcuffs Kaiser and they go down the hall and out of camera range.  There appears to be several seconds of time in the hospital hallway that were not captured on the video.  When Kaiser and Russell appear on the video footage again, they are near the hospital exit doors, just inside the hospital.  It is here Russell appears to pull down and back on the handcuffs, while Kaiser is facing away from him, and Kaiser is taken to the ground.  The parties dispute exactly what occurred at that moment.  Russell has filed an affidavit stating that Kaiser was trying to pull away, he pulled back, Kaiser lost his balance, and both fell to the ground. (ECF No. 25, ¶ 18-19).  The image quality is not perfectly clear, and the fall occurs fairly far from where the camera is positioned.  What exactly happened at that time presents a question of fact for the jury.

---

[1]Although the amount of force used is unclear from the video, Deputy Russell's own report states he "pushed the [plaintiff] away and told him this would be his one warning". (ECF No. 25-1).

ORDER - 3

1    Defendant has also filed a Statement of Facts, which includes additional facts. The

2  following are largely undisputed by Plaintiff. When there is a dispute it is noted:

3    Deputy Russell and Deputy Smith were dispatched to Sacred Heart Medical Center

4  at 10:20 p.m. in response to a shooting. (ECF No. 27, ¶ 1).  When the Deputies entered the

5  hospital room, Nathan Kaiser, Plaintiff's son, was being treated for the gunshot wound.

6  Plaintiff was present along with other family members and a friend.  Defendant's

7  Statement of Fact ("SOF") appears to erroneously refer, numerous times, to "Deputy

8  Jones".  (See ECF No. 27, ¶¶ 2-17).  After stating that Deputies Russell and Smith were

9  dispatched, Defendants' SOF states that Deputy "Jones" arrived.  Deputy Jones is not a

10  named party.  No affidavit was filed by a Deputy Jones.  The Incident Reports submitted

11  by Deputies Russell and Smith do not mention a "Deputy Jones".  This apparent and

12  repeated error muddles the summary judgment record.  Is there another Deputy who was

13  involved but that is not mentioned in the Incident Reports, and who has submitted no

14  evidence?  It appears more likely that references to "Deputy Jones" are actually to Deputy

15  Smith, as the Defendants' Statements of Fact concerning Jones often cite to the Smith

16  affidavit as support.  A review of Defendant's Trial Witness List (ECF No. 34) contains no

17  reference to Deputy Jones.  The court will proceed with this Motion assuming the

18  references to "Deputy Jones" are erroneous and meant to refer to "Deputy Smith".

19    Deputy Smith entered Nathan's hospital room first and spoke with Nathan.  He also

20  spoke with Nathan's friend, Nolan.  Deputy Smith states that when he attempted to speak

21  with Nathan, Plaintiff was "interrupting and interjecting himself" (*Id*. at ¶ 8).  Plaintiff

22  denies that allegation.  Deputy Russell took several photos of Nathan Kaiser.  Plaintiff

23  was standing near the bed, and Russell asked Plaintiff to step back so he could take

24  photos. (ECF No. 27, ¶ 12).  Deputy Russell states that Plaintiff smelled of alcohol, but

25  Plaintiff denies it, stating he had less than one full glass of wine.  Deputy Smith requested

26  that Deputy Russell clear the room so that he could speak with Nathan alone. (*Id*. at ¶ 16).

27  Russell motioned for Plaintiff to leave the room, and then asked Plaintiff three times to

28  "come here". (*Id*. at ¶ 18).  Russell then threatened to arrest Plaintiff for obstruction if he

did not leave the room. (*Id*. at ¶ 20).  Russell contends Plaintiff was aggressive in his body language, "pushed his chest out" and attempted to brush against Russell. (*Id*. at ¶ 21). Russell admits handcuffing Plaintiff and directing him down the hallway.  As to the fall, which is captured on video, Russell contends  Kaiser was trying to pull away, he (Russell) pulled back, Kaiser lost his balance, and they both fell to the ground. (ECF No. 25, ¶ 18-19).

Plaintiff contends he was the only one asked to leave the hospital room, and that he had said nothing in the minutes before he was asked to leave. (Plaintiff's Depo. at ECF No. 30-1, p. 62).  He claims that as he exited the room, Russell shoved him in the back. Plaintiff claims he was not saying anything when he was shoved in the back, and describes his own demeanor as "curious". (*Id*. at 64).  Plaintiff claims he asked what he did wrong, and why he needed to leave the emergency room. (*Id*. at 65).  He claims he was not agitated or interfering with the investigation.  Plaintiff claims that after he was handcuffed by Russell and they were walking down the hall, he told Russell of a prior surgery on his right hand and that the handcuffs were hurting him.  Plaintiff states he was thrown against the wall and that his hands and wrists were twisted. (*Id*. at 67).  He claims that near the exit door he was shoved forward head first, then pulled back and thrown against the wall. (*Id*. at 69).

### III.  Discussion

### A.  Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the moving party does not have to disprove matters on which the opponent will bear the burden of proof at trial, they nonetheless bear the burden of producing evidence

that negates an essential element of the opposing party's claim and the ultimate burden of persuading the court that no genuine issue of material fact exists. *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the nonmoving party has the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving party's case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

Once the moving party has carried its burden, the opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the opposing party must come forward with specific facts showing that there is a genuine issue for trial. *Id.*

Although a summary judgment motion is to be granted with caution, it is not a disfavored remedy: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(citations and quotations omitted).

**B.  Motion to Strike Winthrop Taylor's Testimony**

Before determining the Motion for Summary Judgment, the court must decide another motion relating to the evidence of record.  Defendants have filed a Motion to Strike (ECF No. 20) and exclude the testimony of Plaintiff's designated expert, Winthrop Taylor.  The Motion states that Taylor proposes to offer opinion testimony that: "Deputy Jeremy Russell lacked the lawful authority to compel Mr. Wesley Kaiser to leave the bedside of his injured son." (*Id.* at p. 2).  Defendant states Mr. Taylor testified at deposition that the only opinion he was asked to render was on the following question: "whether a police officer of reasonable training and experience would believe --would have believed he had lawful authority to remove Mr. Wesley Kaiser from the hospital room at the time he did." (ECF No.  20, p. 8).

Plaintiff's Response (ECF No. 28) states that Mr. Taylor is prepared to testify "that a reasonable officer in Deputy Russell's position would not have believed he had legal authority to order Plaintiff to leave the room." (ECF No. 28, p. 2). Plaintiff also states that although Mr. Taylor's report may contain implied comments on the credibility of other witnesses, he would not testify as to credibility at trial.

Under Fourth Amendment excessive force analysis, the inquiry is objective reasonableness, not what the officer individually and subjectively believed. Similarly, whether there was probable cause for arrest is an objective determination. Plaintiff's briefing recognizes that an "officer's subjective state of mind is irrelevant to a determination of probable cause." (ECF No. 29, p. 7). Therefore, Mr. Taylor cannot testify that <u>Deputy Russell could not have believed</u> that he had legal authority to order Plaintiff to leave the room. However, whether Mr. Taylor can testify that <u>a reasonable officer would not have believed</u>, is a slightly different inquiry.

Consideration of Mr. Taylor's proffered opinion has no impact on the court's determination of the instant Motion. The court **DENIES** the Motion to Strike for purposes of evidence in the summary judgment record. Defendants may renew the Motion in regard to Winthrop's testimony at trial at the Pretrial Conference.

**C. Unlawful Arrest**

Plaintiff contends that he was arrested without probable cause in violation of his Fourth Amendment rights and asserts a claim under 42 U.S.C. § 1983. (Complaint ¶ 16). "A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Whether probable cause exists "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id*.

Viewing the facts in a light most favorable to Plaintiff, there are issues of fact concerning the existence of probable cause to arrest Plaintiff for obstructing a law enforcement officer. Plaintiff claims he did not say anything to Deputy Russell before

ORDER - 7

being asked to leave the hospital room.  Plaintiff claims he was not interfering or interjecting himself into the conversation between Deputy Smith and Nathan Kaiser.  He claims Deputy Russell shoved him in the back without provocation.  Plaintiff claims he then asked what he did wrong, and why he needed to leave the emergency room.   He states he was thereafter handcuffed by Russell and led down the hallway.  Deputy Russell claims at this point Plaintiff was "detained" and that he was not "under arrest" until the disputed incident near the exit door where Plaintiff was either thrown to the ground, or lost his balance while trying to pull away and fell to the ground.

The Washington Supreme Court has recently reiterated that: "Washington courts have long limited the application of obstruction statutes, lest those statutes infringe on constitutionally protected activity." *State v. E.J.J.*, 2015 WL 3915760 (June 25, 2015). Washington cases have "consistently required *conduct* in order to establish obstruction of an officer." *Id*. at *2.  "A conviction for obstruction cannot be based solely on an individual's speech because the speech itself is constitutionally protected." *Id*.  According to Plaintiff's deposition testimony, he was not agitated and was not interrupting or interfering with questioning by Deputy Smith.  He states he asked why he needed to leave, and what he had done wrong.  Such conduct would not constitute obstruction, and the jury could believe his testimony.  To the contrary, the jury, as the finder of fact, could  believe the testimony of Laura Roehl, Plaintiff's ex-wife, who was present in the room that evening.  According to Roehl, Plaintiff "appeared intoxicated" and was "talking a lot/interrupting the officer". (ECF No. 26).  She states that when asked to leave the room, Plaintiff became "aggressive" and "physically and verbally combative" towards the officers. (*Id*.).

At this juncture, the court must view the facts in a light most favorable to the Plaintiff.  According to Plaintiff, all he did was stand close to Deputy Russell and ask him why he needed to leave and what he did wrong.  The United States Supreme Court has stated that "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we

distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 454 (1987).  Plaintiff was visiting his adult son, who had recently suffered a gun shot wound, in the hospital.  Plaintiff being unhappy about being asked to leave, and questioning why he needed to leave, does not, in and of itself, constitute obstruction.

Defendant's Motion for Summary Judgment as to the claim of unlawful arrest is **DENIED**.

### D.  Excessive Force

As set forth by the  Supreme Court in *Graham v. Connor*, 490 U.S.  385 (1989), the analysis under the Fourth Amendment is whether the use of force was reasonable.  Making the reasonableness determination "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The reasonableness inquiry is an objective test: "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  In determining whether the force used was excessive, the court looks at the severity of the force used and the need for force. *Tekle  v. United States*, 511 F.3d 839, 844 (9th Cir. 2007).  In evaluating the need for force, the court may look to the severity of any crime at issue, whether a suspect poses an immediate threat, and whether a suspect is actively resisting or attempting to evade arrest. *Id.*  The most important *Graham* factor is whether the suspect posed an immediate threat to the safety of the officers or others. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011)(en banc).

As to the severity of the crime at issue, the alleged conduct was relatively minor, and viewing the facts in a light most favorable to Plaintiff, the conduct did not amount to obstruction.  Concerning the second factor, it also weighs in favor of Plaintiff.  Plaintiff was not armed.  The only evidence of his being a threat, is evidence concerning his potential intoxication and aggressive behavior.  There is no evidence that he threatened Deputy Russell or physically assaulted Russell prior to being handcuffed.  Russell's

testimony concerning alleged aggressive behavior is that Plaintiff walked near him and "pushed his chest out". (ECF No. 25, ¶ 12). There is a question of fact, as set forth above, concerning whether Plaintiff actively resisted Russell after he was handcuffed.

Plaintiff has testified that Russell ran his head into the wall when his hands were handcuffed behind his back. He has testified that Russell threw him against the wall, twisted his hands and wrists, and he was then either thrown or fell to the ground. A jury could find such use of force to be unreasonable and excessive under the Fourth Amendment. Defendants' Motion for Summary Judgment on the claim of excessive force is **DENIED**.

### E. Municipal Policy or Custom

Spokane County, a municipality, is not liable under § 1983 for the acts of its employees on the basis of respondeat superior liability. *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 691 (1978). A municipality is only liable if the constitutional violation is the result of an official policy or custom. *Id.* at 694 ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Defendants did not challenge the sufficiency of the Complaint, but it does not appear the Complaint states a claim for *Monell* liability. (ECF No. 1-4). Regardless, Plaintiff in Response (ECF No. 29) to the Motion concedes that "there is insufficient evidence to sustain a § 1983 claim against Spokane County under *Monell* and that the County is entitled to summary judgment on that claim." (ECF No. 29, p. 2). Defendant Spokane County's Motion for Summary Judgment on the issue of municipal liability is **GRANTED**.

### F. Negligence

Plaintiff claims that Deputy Russell's actions breached a duty of care to him and support a claim of negligence under Washington state law. Plaintiff also claims that Spokane County is liable for his negligence under a theory of respondeat superior. (*See*

Complaint at ECF No. 1-4, ¶ 14-15).  Defendant argues that the claim is precluded by the "public duty doctrine". (ECF No. 22, p. 13).  Defendant also argues that Plaintiff cannot establish the damages element of a negligence claim.  Plaintiff responds that his injuries do not require expert testimony, and that to the extent expert testimony is required, his treating physician, Dr. Trumble, has been disclosed and could testify.  As to the duty of care, Plaintiff contends it is well-established that a law enforcement officer owes a duty of care to an arrestee who has been taken into custody.

The "public duty doctrine" provides that "no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general." *Taylor v. Stevens County*, 111 Wn.2d 159, 163 (1988).   In the context of a Section 1983 excessive force claim, the Ninth Circuit has recognized the validity of the public duty doctrine defense. See *DeBoer v. City of Olympia*, 183 Fed.Appx. 671 (9th Cir. 2006)("The public duty doctrine precludes DeBoer's claims that the individual officers were negligent.").  District courts in the state of Washington have similarly found that "while it is true that the officers owe a general duty to all citizens to avoid the use of excessive force when effectuating an arrest, it cannot be said that they owe the plaintiff a specific duty." *James v. City of Seattle*, 2011 WL 6150567 (W.D. Wash. 2011) citing *Pearson v. Davis*, 2007 WL 305125 (W.D.Wash. 2007); *Jimenez v. City of Olympia*, 2010 WL 3061799 (W.D.Wash. 2010); *Donaldson v. City of Seattle*, 65 Wash.App. 661 (1992).

In *Pearson*, the plaintiff argued that the officers owed a duty of care to her as a handcuffed woman "to refrain from using more force than necessary to effect her arrest and custody", and that the officers had engaged in "negligent handling".  The court rejected that claim based on the public duty doctrine.  It would appear to the court that the public duty doctrine applies in this instance as well. Plaintiff's assertion of negligence in the Complaint is conclusory: "Russell's conduct as alleged herein constitutes a breach of his duty of care toward Plaintiff, which breach was the direct and proximate cause of

ORDER - 11

injury to Plaintiff." (ECF No. 1-4, ¶ 14).  Defendant's Motion states they cannot discern what duty Plaintiff alleges was breached and "if Plaintiff offers a specific duty that was breached, Defendants will address it in their Reply." (ECF No. 22, p. 15).  Plaintiff in response asserts that the duty is a "duty of care toward an arrestee to protect them from foreseeable harms." (ECF No. 29, p. 10).  Plaintiff cites four federal cases in support of its argument, none from the Ninth Circuit and none discussing Washington law.  Plaintiff cites to one Supreme Court case, wherein the court sets forth the broad principle that: "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County*, 489 U.S. 189, 200 (1989).

　　　None of the cases cited by Plaintiff are factually on point, as the alleged injuries to Plaintiff Kaiser occurred during the 2-to-3 minute time period in which he was being handcuffed and led from the hospital to the patrol car.  They did not result from him being in custody for a period of time, or involve the State's obligation to provide "food, clothing, shelter, medical care, and reasonable safety" as discussed in *DeShaney*.  Plaintiff's reliance on a broad general principle of a duty to individuals in custodial care does not trump the analysis set forth in the public duty doctrine cases which Plaintiff has failed to address. Defendants' Motion for Summary Judgment on the negligence claim is **GRANTED**.  As the negligence claim against Russell is dismissed, the respondeat superior claim against the County for Russell's alleged negligence must also be dismissed.

### IV.  Conclusion

　　　Viewing the facts in a light most favorable to Plaintiff, Deputy Russell did not have probable cause to arrest Plaintiff for obstruction.  Considering the factual record, including the video evidence, a jury could find Deputy Russell's use of force to have been unreasonable, and thus excessive.  Therefore, the Motion as to the claims of unlawful arrest and excessive force against Russell is Denied.  The negligence claim against Russell is precluded by the public duty doctrine, and thus the claim against the County under a

theory of respondeat superior also fails.  All claims against Spokane County will be dismissed for the reasons set forth herein.

**IT IS HEREBY ORDERED**:

1. Defendants' Motion to Exclude Mr. Taylor (ECF No. 20) is **DENIED** with leave to renew at the Pretrial Conference.

2. Defendants' Motion for Summary Judgment (ECF No. 22) is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is granted as to all claims against Spokane County and those claims will be dismissed.  The Motion is also granted as to the negligence claim against Deputy Russell.  The Motion is denied as to the excessive force and unlawful arrest claims against Russell.

3. Pretrial Conference remains set in this matter for **September 4, 2015** at 10:00 a.m., in Spokane, Washington.

4. Jury trial remains set for **September 21, 2015, at 9:00 a.m.** in Spokane, Washington.

**IT IS SO ORDERED**.  The Clerk is hereby directed to file this Order and furnish copies to counsel.

Dated July 30, 2015.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE